DOUTHIT et al. v. SCOTT et al.

No. 31111.   Jan. 30, 1945.

*155 P. 2d 538.*

J. G. Austin, Dyke Ballinger, and A. L. Commons, all of Miami, for plaintiffs in error.

Frank Nesbitt and A. C. Wallace, both of Miami, and Grant Waggoner, of Baxter Springs, Kan., for defendants in error.

RILEY, J. In this case, plaintiffs in error were plaintiffs in the trial court and defendants in error were defendants. The parties will be referred to as in the trial court.

Plaintiffs seek to recover the value of certain lead and zinc ores which they alleged defendants took from certain land belonging to plaintiffs, and converted to their own use and benefit. In the second cause of action, plaintiffs allege a trespass by defendants and the destruction of pillars in the underground lead and zinc mine, thereby causing damage to them.

Plaintiffs' property consists of a 40-acre tract of land referred to in the record as the "Indiana Mine." West of the Indiana Mine is located another 40-acre tract referred to as the "Crutchfield Mine." Lying north and adjoining both, is the "Brewster Lease." Lead and zinc mining operations had been carried on for many years in all three mines. At the Crutchfield Mine the ore-bearing formation was present in the northeast part of the 40-acre tract. In the Indiana Mine the ore-bearing formation was along the east side and north side nearly to the north line and along the west side for two or three hundred feet south from the northwest corner. In the Brewster Mine the ore-bearing formation ran to the south line near the northwest corner of the Indiana Mine and from there west along the north line of the Crutchfield Mine. Shafts had been dug on each of the mines to the ore-bearing formation and radiating therefrom were a series of drifts or tunnels following the ore-bearing formation.

In the operation of the mines prior to about 1926, the mines had been cut together. The Brewster and Crutchfield Mines had been cut together for some distance west from the northeast corner of the Crutchfield, and the Indiana and Crutchfield had been cut together for a distance of about 200 feet south from the northwest corner of the Indiana. Mining operations have been carried on in the Indiana Mine for many years at different times by different operators. A part thereof was by the Eagle-Picher Mining & Milling Company. It was during the operations of that company, about 1926, that the Indiana and Crutchfield were cut together. The floor of the Indiana Mine ran somewhat lower along a line running northwest and southeast, slightly to the west of the center line of the mine. About 1926 water rose in the depression nearly to the roof of the mine, thereby shutting off access to the west part of the mine from the east part, and operations in the west part of the mine were abandoned. In the operations, six or seven pillars, containing lead and zinc ores, had been left near the west line to support the roof of the mine. Similar operations had been carried on in the Crutchfield by the Smith-Davis Company, and pillars had been left in that mine along the east line. In the Indiana Mine some valuable ores had been left in the floor of the mine in places called stopes. Late in 1929 the owners

of the Crutchfield Mine contracted with the Commerce Mining & Royalty Company granting that compay the right to work the mine. Later the Commerce Company sub-leased to defendant LeRoy Scott. Scott then sublet to defendant Riley Burcham, and Burcham gave defendant J. A. Bell the right to enter the premises and extract ores. The other defendants became associated with Bell. They worked the Crutchfield Mine by what is termed "gouging" during 1933, 1934, and 1935. During that time the only way entrance into the west part of the Indiana Mine could be made was by going down the shaft in the Crutchfield Mine, thence east to the Indiana, or down the shaft of the Brewster Mine thence south into the Crutchfield and east into the Indiana. About 1936, plaintiff Douthit, the owner of the Indiana, and plaintiff Wesley Smith, who owned 5% royalty interest in the Indiana, contracted with plaintiff Byrdhart Mining Company to mine ore from the Indiana. About 1936 they conducted extensive pumping operations whereby they lowered the water level in the Indiana so as to permit examination of the condition of the west part of the Indiana.

Plaintiffs allege that sometime between 1931 and 1936 defendants had entered the Indiana and removed three of the pillars therefrom and took valuable ores from the mine; that as a result, loose rock fell from the roof of the mine and rendered it dangerous to attempt mining operations therein. Plaintiffs sue for the value of the ore taken and for damages caused by the falling of the roof of the mine. Defendants answer by general denial.

A jury was waived and the case was tried to the court. Plaintiffs requested separate findings of fact and conclusions of law. Findings and judgment were for defendants, and plaintiffs appeal.

It is contended that the court erred in rendering judgment for defendants; in refusing to make certain special findings of fact and conclusions of law requested by plaintiffs. It is also urged that the court erred in denying plaintiffs' supplemental motion for new trial based upon alleged newly discovered evidence.

Two principal issues of fact are involved: First, whether any trespass had been committed upon plaintiffs' property and valuable ores taken therefrom and damage done to their property, and, second, if that be established, whether defendants committed the trespass and damaged plaintiffs' property. The burden rested upon plaintiffs to prove the affirmative of both issues. There is little conflict in the evidence as to the first issue; plaintiffs established that without substantial conflict in the evidence. On the other issue, the evidence is in sharp conflict. Plaintiffs produced direct evidence tending to prove that defendants entered the Indiana Mine and took some ore therefrom. They also proved a set of circumstances which tended to establish that fact. But it cannot be said that the circumstances showed conclusively that defendants took the ore and damaged the property. On that question the evidence is in direct conflict. It is shown that the defendants, during the four-year period, took and sold ore as coming from the Crutchfield Mine of the value of about $21,000. But all, or nearly all, the miners who did the work testified positively that all their operations were on the west side of the line between the Crutchfield and the Indiana Mines and that all the ore taken was from the Crutchfield Mine.

The trial court found:

"that the plaintiffs have failed to prove by the weight and preponderance of the evidence that defendants, or anyone, by, through, or under them, conducted mining operations on the lands owned by the plaintiff, Douthit; or that the defendants, or anyone holding by, through, or under them, took any ore, mineral, or ore-bearing rock or dirt from the lands of the plaintiff, Douthit . . . or that the defendants, or those holding by, through, or under them, had anything to do with removing the pillars, stope, or rock from the lands of the plaintiff, Douthit; and for that reason the court finds the issue of fact

in favor of the defendants and against the plaintiffs; . . ."

The evidence is in direct conflict on the vital issue. This court cannot weigh the evidence in a case of this nature. It has many times been held that in actions at law tried to the court without a jury, where the evidence is in conflict, the findings of the trial court have the same force and effect as the verdict of a jury and are final and binding upon this court. Therefore, we cannot say as a matter of law that the court erred in finding that the plaintiffs had failed to sustain the burden of proof by a preponderance of the evidence.

The conclusions of law by the trial court, based upon the above findings, were correct. Therefore, we cannot hold that the court erred in rendering judgment for defendants.

Plaintiffs contend that the trial court erred in not making findings of fact as to certain questions, and particularly as to whether in 1931 and 1932 there were pillars of rich ore and ore bodies located in the Indiana Mine near the Crutchfield, and whether same had been removed; as to the amount of ores taken and sold during any period of time, as to when defendants mined the ore they admittedly hoisted and sold; that the court made no findings in any way to explain why or when the ores were taken or who took them. Plaintiffs also contend that the court failed to make findings of fact as to other minor questions. Necessity for findings of fact as to these matters depended entirely upon what was the fact as to whether or not' defendants did conduct mining operations on the land owned by plaintiff Douthit, and removed therefrom ore and ore-bearing rock. The trial court properly held that this was the vital issue. The findings of the trial court on that issue were complete and adequate in every way. It is apparent that when that vital issue was decided adversely to the claim of plaintiffs, there was no necessity for findings of fact on the other matters mentioned.

12 O.S. 1941 § 611, which provides for conclusions of fact separate from conclusions of law upon proper request, requires no more than that the material and controlling facts and conclusions as found by the court shall be so separately stated as to render them distinguishable and thereby enable the party to except to any particular finding or conclusion as may prejudice his rights. Etchen et al. v. Texas Company et al., 82 Okla. 62, 199 P. 212.

After the cause was tried and judgment rendered, plaintiffs filed their supplemental motion for new trial, based upon alleged newly discovered evidence. This motion is based upon and supported by the affidavit of D. C. Schink, a mining engineer who was one of the principal witnesses for plaintiffs at the trial. The substance of this affidavit is that the witness Schink, at the request of plaintiff Douthit, entered the Indiana Mine and the Crutchfield Mine on or about March 10, 1942 (nearly two months after the judgment was entered). His purpose was to check up the two leases and the nature, extent, and location of the underground workings therein, and the location of a certain railroad track which had been laid in the mine and about which the witnesses had testified and the location and extent of certain fallen slabs at or near the line about which witnesses had testified at the trial; that by careful survey, he stated he was able to state positively that the places where defendants' witnesses had testified that they had taken the ore which they sold from the Crutchfield Mine had never been excavated below the original floor of the mine and that other conditions existed in the two mines at or about where they were cut together which clearly indicated that the defendants' witnesses who mined the ore testified falsely as to where they obtained same, or were mistake as to the location where they obtained the ore.

The substance of plaintiffs' contention is that because defendants in their pleadings did not set forth and allege the location in the Crutchfield Mine where they mined or obtained the ore

which they took out through the Crutchfield shaft, plaintiffs could not anticipate and prepare to meet the testimony of defendants as to where they actually obtained the ore, and that they are now prepared to show that defendants testified falsely or that they were mistaken as to the place where they did obtain the ore.

The record discloses that when the controversy first arose and long before this action was commenced, plaintiff Douthit and defendant Cluck entered the mine in connection with the claim of Douthit and Byrd; that defendant pointed out to Douthit and Byrd the places where Cluck and his associates claimed that they took the ore in the Crutchfield Mine. This was substantially the same as they testified to at the time of the trial and was at or near the same place. The engineer Schink, by his affidavit, states that there was no evidence of ore having been taken from the Crutchfield Mine as claimed by defendants. Schink was also a witness at the trial and testified that in September, 1936, he made an underground survey of the Indiana Mine and identified a map thereof which he made in connection with that survey. This plat or map was introduced in evidence and shows the Indiana Mine and an extension over and onto the east part of the Crutchfield. He testified that while the case was being tried on Wednesday of the week before he was called the second time as a witness, he had gone into the mine and examined the condition of both mines; that he went completely over on the Crutchfield side; that he had with him a complete map of the Smith-Davis workings and their extensions from month to month; that he then examined the developments on the Crutchfield.

From this, it appears that plaintiffs knew where defendants claimed they had mined the ore. Plaintiffs had ample time and opportunity to make the same survey before the trial was completed which Schink, in his affidavit, states that he made in March, 1942, after the trial. Therefore, the alleged facts stated in the affidavit of Schink and the motion for new trial cannot properly be classed as newly discovered evidence. Plaintiffs had ample opportunity to obtain this evidence before the trial. A new trial will not ordinarily be granted on the grounds of newly discovered evidence when the evidence relied upon goes only to the impeachment of the evidence of a witness for the opposite party. Kennedy v. Pulliam, 60 Okla. 16, 158 P. 1140; Lookabaugh v. Bowmaker, 30 Okla. 242, 122 P. 200; Craig v. Craig, 114 Okla. 302, 247 P. 67.

Judgment affirmed.

GIBSON, C.J., HURST, V.C.J., and OSBORN, BAYLESS, WELCH, CORN, DAVISON, and ARNOLD, JJ., concur.